MILLER AND GREGSON *v.* STATE.

Opinion delivered September 27, 1926.

1. INTOXICATING LIQUORS—POSSESSION OF STILL.—Evidence *held* sufficient to sustain a conviction for possessing an unregistered still, contrary to Acts 1921, p. 372.

2. INTOXICATING LIQUORS—POSSESSING STILL—EVIDENCE.—In a prosecution for possessing an unregistered still, where defendant, arrested at the still, denied ownership or possession thereof, evidence that defendant's son was seen on the same morning in the vicinity of the still with sacks of sugar, "shorts", and fruit jar lids, was competent in considering whether defendant was at the still by accident or for the purpose of operating it.

3. CRIMINAL LAW—COMPETENCY OF EVIDENCE OF ANOTHER CRIME.—
In a prosecution for possessing a still, testimony that a witness
bought whiskey from one defendant, being taken to his house by
his codefendant, *held* competent.

4. WITNESSES—IMPEACHMENT ON CROSS-EXAMINATION.—In a prose-
cution for possessing a still, it was competent, as affecting his
credibility, to cross-examine defendant as to his having been
caught at another still after his arrest:

Appeal from Craighead Circuit Court, Jonesboro
District; *G. E. Keck*, Judge; affirmed.

*Hawthorne, Hawthorne & Wheatley*, for appellant.

*H. W. Applegate*, Attorney General, and *John L. Carter*, Assistant, for appellee.

McCULLOCH, C. J. Appellants were separately
indicted for the statutory offense of keeping in posses-
sion an unregistered still (Acts 1921, p. 372), and on
the trial of the two cases together, by consent of parties,
both of the appellants were convicted and sentenced to
the penitentiary.

The first and principal contention is that the evi-
dence is not sufficient to sustain the verdict of conviction.

The sheriff of the county and two citizens who accom-
panied him on a raid testified that, early one morning,
they found a distillery out in the woods, at which there
were ten or twelve barrels of mash ready for use in the
distillation of alcoholic spirits. They testified that they
waited at the still, in hiding, for several hours, and that,
about eight o'clock in the morning, the two appellants,
George Miller and Bill Gregson, came up and walked in
among the barrels of mash near the distillery. The offi-
cers commanded them to hold up their hands, which they
did, and they were placed under arrest. Miller claimed,
according to the testimony of the witnesses, that he had
come there to make a run of the distillery for a man
named Gaither, who, with others, was operating the still,
and that it was Gaither's day to make a run. Gregson
was standing a few feet away, and made no response to
this statement of Miller, but Gregson, according to the
testimony of the witnesses, made the statement that he

was not worried, as it did not mean "but a year anyway, and maybe six months."

The sheriff testified that, shortly afterwards that morning, he arrested Miller's son and another young man in a car about half a mile from the distillery, and that the boys had two sacks of sugar and a sack of "shorts," or bran meal, some fruit-jar lids and rubbers.

Miller denied that he made the statement to the officers to the effect that he was there for the purpose of operating the still. He testified that he had arranged with a man by the name of Freeze, who owned land there, to cut cordwood, and that, when arrested by the officers, he was merely walking down into the woods to find the boundary line of the land on which he was to cut the wood. He testified that he did not know that the distillery was there until the officers called out to him to hold up his hands. Gregson testified to the same effect, saying that he accompanied Miller into the woods to see about the timber, as he expected to haul it when cut by Miller.

We are of the opinion that the evidence was legally sufficient to sustain the verdict. The presence of the accused at the distillery, which was ready for operation, together with the statements made to the officers, constituted sufficient evidence that appellants had appeared there for the purpose of taking possession of the still and operating it.

Assignments of error are also made with respect to the court's ruling in admitting testimony. It is insisted that the court erred in permitting the sheriff to testify concerning Miller's son having the sacks of sugar and "shorts" and the fruit-jar lids in the vicinity of the distillery. The articles in possession of Miller's son were such as are customarily used in the manufacture and distribution of alcoholic liquors, and the fact that those things were in the possession of Miller's son was competent in considering whether or not Miller was at the distillery by accident or for the purpose of operating the distillery. Appellant contended that the boy had been

sent to purchase those articles for use in preserving and canning fruit, but it was a question for the jury to determine whether the boy, as a member of Miller's family and under his control, had procured the things at Miller's request for use at the distillery.

Again, it is insisted that the court erred in permitting witnesses Moore and Lyttel to testify that they bought whiskey from Miller and that they had been carried to Miller's house by Gregson to procure the liquor. This was competent for the purpose of showing that both of the appellants were engaged in the liquor traffic and as corroborative of the proof that they were interested in the operation of the distillery at which they were found by the officers.

Error is assigned in the ruling of the court permitting the prosecuting attorney to interrogate Miller, on cross-examination, as to his being caught at another distillery in the neighborhood since he was arrested. This was competent for the purpose of discrediting Miller as a witness. The fact that he was asked about an occurrence since he was arrested does not lessen its competency for the purpose of testing the credibility of the witness.

There are other assignments, which are not of sufficient importance to discuss.

We find no error in the record, and the judgment is therefore affirmed.